# EL BANCO POPULAR DE ECONOMÍAS Y PRÉSTAMOS DE SAN JUAN, Complainant,

*v.*

# E. B. WILCOX, Dft.

---

San Juan, Equity, No. 946.

ON EXCEPTIONS TO REPORT OF SPECIAL MASTER.

Master's Report—Exceptions.
    1. An exception to a master's report of a sale of property under

El Banco Popular de Economías y Préstamos v. Wilcox.

decree of this court on the ground that the price obtained was inadequate will not be considered unless it is satisfactorily shown to the court that a higher price would be brought at a resale.

Master's Report—Exceptions—Informalities at Sale.
2. An exception to a master's report that a sale should be set aside on account of informalities in the proceeding will not be sustained where it is shown that the informalities were not material.

Master's Report—Exceptions—Place of Public Sale.
3. An exception taken to a master's report on the ground that the sale was not held at the proper place will be sustained where it is shown that the decree ordered the sale to be held in the court room, and it was advertised to be held at the courthouse door, the point being material on account of this courthouse having several doors.

Opinion filed January 25, 1917.

Mr. *Frank Antonsanti* for complainant.

Mr. *J. R. F. Savage* for defendant.

HAMILTON, Judge, delivered the following opinion:

This case comes up upon exceptions to the report of the special master of his sale of the property under a decree of this court. The exceptions set up several alleged defects. There are two classes, and they will be spoken of separately.

1. The first that need be mentioned is as to the inadequacy of the price. It seems that a previous party to the case said that the property was assessed for $13,000, and the report of sale shows that the property brought $5,000. The mortgage debt, as I understand it, was for a larger amount than the

El Banco Popular de Economías y Préstamos v. Wilcox.

$5,000, so the property did not bring the amount of the mort-
gage. The general rule and practice is to require rather strict-
er proof than seems to be made in the case as to values. The
best practice when property is alleged to have been sold for less
than its value is for an affidavit or offer to be brought in by
someone, that he would on a resale bid a certain amount or
exceeding a certain amount. Otherwise the application for a
resale is purely speculative. The court has no means of telling
whether a resale would do any good. The fact that the prop-
erty brought less than its value is not conclusive, because un-
fortunately property very often does bring less than its value
at a forced sale; that is to say, at a public sale. This is not so
much the point as what would happen if there was a new sale.
Would it bring any more? There would be no advantage in
going through the same procedure at necessarily increased ex-
pense if the result is not going to be different from what it was
before, and as to that there ought to be some tangible evidence
before the court. So that so far as that ground is concerned it
does not seem to be very strongly sustained by evidence.

2. There is a second ground of exception, in fact there are
a number of grounds, but they may be classified in these two
ways, and the second class of exceptions refer to informality in
the sale itself. That would be a good ground of objection re-
gardless of the amount. If the property sold for its full value
and still was a sale that was not ordered by the court, it would
be a bad sale. The affidavits seem to set up two or three mat-
ters of that sort. In the first place, it is alleged that the sale
was begun at the courthouse door and finished upstairs in the
court room, as a consequence of the special master's noticing,
rather late, that he should sell in the court room, and not at

El Banco Popular de Economías y Préstamos v. Wilcox.

the courthouse door, under the terms of the decree. That by itself would not be material, I think. If the proper place of sale was upstairs, and within a few minutes of the time set,— because the law makes a reasonable allowance for difference of clocks and other circumstances,—no matter what the master had done somewhere else, if he had come to the right place and offered the property in the right way, the sale would be good. So, I do not think that would be material by itself. Another point, really connected with the first one, is that a prospective bidder came to the court room, which was the proper place, and was informed by a person connected with the court that the sale was to be somewhere else, either in front of this building or in front of some other building; and under some misunderstanding he went off and did not appear at the right place or the wrong place, as the case may be. This, however, would come under the principle mentioned first, that unless there is some evidence that he or someone is now prepared to pay more, it would not be material.

3. The last ground that need be considered is as to the place of sale. The decree of court was that the property be sold in the court room. I would like to say that that particular clause of the decree did not attract my attention at the time it was brought to me for signing. The question has come up once or twice before. I think sales should be at a more public place than the court room. I think they should be at the courthouse door, as is specified in the Statute of 1893, although it is optional with the court to change that. I think it would be very unusual circumstances that would justify a change. For instance, there has been a case in this court where a lot of diamonds were smuggled in and were sold. I think a sale in the

court room would be proper in such case, because articles of
that sort could not be handled very well in public; but as a
rule the sale should be at the courthouse door. It may be added
that an advertisement of a sale at the *front* door of the court-
house is perhaps uncertain under the circumstances connected
with the Federal Building in which this court is held. There are
certainly three and possibly five entrances each of which, from
different points of view, could be considered the front door, and
an advertisement of front door would therefore not be satis-
factory. Architecturally the front door faces the bay, and com-
mercially probably the front door is the east entrance, while in
point of usage the northwest entrance, leading to the postoffice,
is the one generally used. The decision of which is the front
door in this case is unnecessary, however, as the decree called
for a sale in the court room itself. The advertisement ran in
the paper for I think the right length of time. It seems to me
that there is no good ground of exception to the length of time
of the advertisement; it substantially complies with the order.
But the advertisement said that the sale would be at the court-
house door. In other words, there is a discrepancy between
the decree and the advertisement. Was that such a discrepancy
as was material? In an advertisement it very often happens
that a word is spelled wrong or a figure is upside down or
something of that sort. It is almost impossible in human af-
fairs to get everything straight all the time. Was this such
a variation as would be material and should affect the sale it-
self? The object of the sale is to get bidders. It is not simply
to enable the complainant, the mortgagee, or whoever it may
be, to obtain a property, and in this case the evidence shows
that the mortgagee has no wish for the property, that he wishes

El Banco Popular de Economías y Préstamos v. Wilcox.

to realize his debt. The object is not to get the property to the mortgagee at a low price. It is to secure a public sale, and public notice is necessary in order to have the public present. That is the object of the advertisement, and if the advertisement is not properly carried out the sale is not a good one. The decree may be good, but the proceedings after the decree would not be good. Here was an advertisement which invited the public to come to the courthouse door. The decree said they must come up into the court room. Was this a material variation? The evidence shows that in point of fact the same people who were downstairs at the courthouse door came upstairs into the court room, and, stated conversely, the evidence seems to be that the same people who were up in the court room were those who were downstairs in front of the building. It might seem, therefore, that no harm could have been done. The place of the sale called for by the decree and that called for by the advertisement were in the same public building.

The point is not without difficulty, but it seems to me that I will have to hold that this variation is material. I do this with some hesitancy, but still, to err on the safe side, if there is any error at all, I will have to hold that the sale is void because the advertisement did not conform to the decree. I regret it very much for a number of reasons. This is the first mortgage foreclosure in this court, as far as I recollect; and it was to be hoped that it would be carried out expeditiously, conforming to the principles of the local law as to an expeditious sale. But it seems that a mistake has occurred, and it is simply a question of whether it is material or not. I think it is material. While the preceding grounds as to undervaluation would not be conclusive, I think there has been an error com-

mitted in the advertisement. That the public, in other words, were not given notice of where the sale was to be, and how far that may have affected them I have no way of telling. Some people might not have wished to go to the courthouse door who would have come to the court room. I have no way of judging one way or the other. It is simply the ordinary case that where an error occurs the court has to presume injury. I think I will have to hold that there was an error in this case, and set aside the sale, and order a resale in whatever may be the shortest time possible.

It is so ordered.